# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 21, 2014

## STATE OF TENNESSEE v. DOROTHY DENISE CROSS

**Appeal from the Criminal Court for Knox County**
**No. 98878      Bobby R. McGee, Judge**

**No. E2013-02133-CCA-R3-CD - Filed September 25, 2014**

Following a jury trial in the Knox County Criminal Court, Defendant, Dorothy Denise Cross, was found guilty as charged of four counts of misdemeanor assault of the victim, who we identify as "E.V." or "the victim." All four counts of the indictment related to the same incident, and each count charged misdemeanor assault under one of the alternative legal bases found in Tennessee Code Annotated section 39-13-101. The trial court merged counts 2, 3, and 4 with count 1, sentenced Defendant to serve 11 months and 29 days in the Knox County Jail, suspended the incarceration, and placed Defendant on supervised probation for 11 months and 29 days. In her sole issue on appeal, Defendant challenges the sufficiency of the evidence to support her conviction. After a thorough review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. J., joined. JEFFREY S. BIVINS, J., not participating.

Mark E. Stephens, District Public Defender; and Scott Carpenter, Assistant Public Defender, Knoxville, Tennessee, for the appellant, Dorothy Denise Cross.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Debbie Malone, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

When a defendant challenges the sufficiency of the evidence to sustain a conviction, the appellate court must determine "whether, after reviewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 43 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000). As particularly pertinent to Defendant's challenge to the sufficiency of the evidence in this case, and in light of this well-settled case law, a summary of the evidence at trial follows.

E.V., born in Honduras, had lived in Knoxville eight years when she testified at trial. In September 2011, she and her family moved into an upstairs apartment of a house at 2901 E. Fifth Avenue in Knoxville. Defendant resided in a downstairs apartment of the same house. On September 16, 2011, the victim was alone in her apartment cooking a meal. She left to go to a store to obtain a few things she needed. When she returned with her purchased items, the victim realized she had locked herself out of the apartment. She made a telephone call to a relative to notify her husband to come home and unlock the door. The victim waited for her husband on the front porch of the house.

Soon thereafter, Defendant arrived at the premises, got out of her car, approached the victim and "started arguing." The victim speaks Spanish and could not understand English. Defendant, who speaks English, does not understand Spanish.

The victim testified that she knew Defendant was arguing "[b]ecause the way [Defendant] attacked me, [Defendant] threw herself at me." The victim stated that Defendant immediately began hitting the victim on her arms and legs and grabbed the victim's hair. Defendant grabbed the victim by the neck and threw her against the wall. At the time, E.V. was seven months pregnant. At one point, Defendant pushed the victim, and both women fell down the two steps of the porch. Defendant ran away when the assault ended. The victim borrowed a phone and called the police. Officers arrived approximately twenty minutes later. An officer capable of speaking Spanish conversed with the victim about the assault.

Prior to the assault E.V. did not personally know Defendant and had not previously spoken with Defendant, but E.V. knew Defendant resided in a downstairs apartment of the house. E.V. testified that she fainted after the assault while she was talking with police officers. She attributed the fainting to the fact her "blood pressure failed." She was taken by ambulance to a hospital where she spent approximately two to three hours before being released. She testified that she suffered pain from the assault on her right leg, lower back, and hips.

On cross-examination the victim stated that she was struck by Defendant "twice on this arm and in the leg" and then Defendant "grabbed me on the neck." Following that, Defendant pushed the victim against the wall.

Knoxville Police Officer William Romanini testified that he was on duty the day of the assault and went to the victim's address in response to an assault call. Because the victim could not speak English, Officer Romanini called another officer to the scene for translation. Officer Romanini testified that the victim stated that Defendant resided in a downstairs apartment (apartment number one) and that Defendant "had pulled [the victim's] hair or something along those lines and kicked [the victim] in the stomach." Office Romanini observed some scratches on the victim's arms. Officer Romanini testified that because the victim stated that she was seven months pregnant and that Defendant had kicked her in the stomach, an ambulance was summoned to take the victim to the hospital.

Defendant testified that she resided at the apartment located at 2901 East Fifth Avenue in Knoxville for only two months. She stated that conditions at the apartment were "deplorable" because the landlord would not "fix anything," including the lock on her door which would not "lock all the way." Defendant testified that in September 2011, she began "noticing that things [in her apartment] were getting moved around - just moved around and I hadn't done anything. And stuff was getting missing." Defendant stated that as a result of this situation, she "called 9-1-1 several times." She testified that ultimately "before I went into my apartment, I had [the police officers] to do a walk around, that's when [the police officers] walk around in [an] apartment and make sure it's safe." She also had the police "patrol the block area." On one of the incidents when she felt a person had unlawfully entered her apartment, Defendant found a pair of scissors that did not belong to her. Defendant testified that she thought the unlawful entries into her apartment were made by "the people from upstairs."

Defendant testified that she saw the victim standing on the porch of the apartment house on the day of the incident on September 16, 2011, when she came home. Defendant had not seen the victim since the victim had moved into the apartment building in August 2011. Defendant admitted that she confronted the victim on September 16, 2011, and explained her version of what occurred:

> I hadn't seen her since she moved in in August, but I did see her in I think the next month over or whatever, and I got off the bus and I came around and I got - - it was two streets over from the apartment, and I went - - and I seen her sitting - - standing on the porch - - standing on the porch.

. . .

-3-

I came up to [the victim] and I told her, I finally seen you. I said, I haven't seen you since you moved in, but I want you to stay out of my apartment. Do you understand me?

. . .

She was probably about where that desk is and I was probably about in front of right here.

. . .

We were adjacent to each other.

. . .

I had two handbags in my hand and I set the handbags on the porch and I told her to stay out of my apartment. "I'm moving as soon as possible, but I need - - I know it's y'all." Was my exact words. "I know it's y'all. And I want you to stay out of my apartment." And she began to speak in Spanish, I don't know what it was. She reached down in her purse - - when she pulled her purse, she reached down in her purse and started searching, and I didn't know what she was searching for, I had one end of her strap and she had the other, we both fell back.

. . .

I thought she had a knife or something. I didn't know what she was saying or who she was calling for or anything like that. And I feared for my life really. But all I know is that she was digging in her purse for something, you know, and I said, "Are you going to cut me?" I grabbed the strap, she had the other strap, I fell back, she fell back.

Defendant testified that when the physical altercation with the victim ended, Defendant went inside her own apartment. Because she had broken the heels on her shoes, Defendant changed shoes. Thereafter, according to Defendant's testimony, "I came back out and I locked the door, I grabbed by bags, and I went off the porch and I left." Defendant walked "back over two streets" and got on a public bus and went to a friend's house. Defendant denied that she hit the victim. Defendant denied knowing the victim was pregnant, and testified that she thought the victim was fat.

The jury found Defendant guilty as to all four separate legal theories of guilt contained in the indictment. The trial court properly merged the convictions in counts 2, 3, and 4 with the conviction in count 1. Thus, Defendant stands convicted of assault as alleged in count 1 of the indictment, which charged the following elements of assault as defined in Tennessee Code Annotated section 39-13-101(a)(1):

> (a)    A person commits assault who:
>
> (1)    Intentionally, knowingly, or recklessly causes bodily injury to another;

Count 1 of the indictment specifically alleged that Defendant committed the assault with the culpable mental state of "knowingly." Tennessee Code Annotated section 39-11-302(b) defines the "knowing" culpable mental state as:

> (b)    "Knowing," refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. *A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.*

(Emphasis added).

"Knowingly" committing assault pursuant to Tennessee Code Annotated section 39-13-101(a)(1) is a result-of-conduct offense. "Generally, an offense may be classified as a result-of-conduct offense when the result of the conduct is the only element contained in the offense." *State v. Ducker*, 27 S.W.3d 889, 896 (Tenn. 2000). As noted above, Defendant appeals her conviction of assault defined as knowingly causing bodily injury to the victim. "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and *physical pain* or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2) (emphasis added).

Defendant's attack on the sufficiency of the evidence to support her conviction is based solely upon inconsistencies within the victim's testimony, between the victim's testimony and medical records, and between the victim's testimony and Defendant's testimony. Defendant argues that this court should reverse this conviction because the victim was not credible and the Defendant was credible.

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Taken in the light most favorable to the State, the proof showed that Defendant was angry and frustrated that a person (or persons) was repeatedly breaking into her apartment and taking items of personal property. Without proof of who was actually doing this, she suspected it was the victim or people the victim knew or lived with. On the day of the assault, Defendant observed the victim on the front porch of the apartment building and knowingly attacked the victim by pushing the victim and by hitting the pregnant victim on her arms and legs. Defendant pulled the victim's hair. The victim fell down two steps in front of the porch. The victim testified that she suffered pain in her right leg, lower back, and hips. A jury could reasonably infer that Defendant knew her conduct would result in pain suffered by the victim.

Under well settled principles of law, Defendant is not entitled to relief on her claim that the evidence is legally insufficient to support the conviction. Accordingly, the judgment of the trial court is affirmed.

_____

THOMAS T. WOODALL, JUDGE